Louis S. Ederer
Alan C. Veronick
Maxwell C. Preston
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Plaintiff*

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____         │
│ DATE FILED:  2/4/13              │
└─────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

SWEET PEOPLE APPAREL, INC. d/b/a MISS ME

                Plaintiff,

       - against -

XYZ COMPANY d/b/a MISSME-JEANS.COM,
XYZ COMPANY d/b/a
MISSMEJEANSOUTLET.COM, XYZ
COMPANIES 1-10, and JOHN AND JANE
DOES 1-10

             Defendants.

-------------------------------------------------------- x

Civil Action No. 12 Civ. 7506 (SAS)

**[PROPOSED] DEFAULT**
**JUDGMENT AND PERMANENT**
**INJUNCTION ORDER AGAINST**
**DEFENDANTS**

WHEREAS, Plaintiff Sweet People Apparel, Inc. d/b/a MISS ME ("Sweet People"),

having commenced an action on October 5, 2012 against defendants XYZ Company d/b/a missme-

jeans.com, XYZ Company d/b/a missmejeansoutlet.com, and XYZ Companies 1-10

("Defendants"), alleging that Defendants engaged in acts of cybersquatting, trademark

counterfeiting and infringement, false designation of origin, false advertising, deceptive acts and

practices, and unfair competition under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the

"Lanham Act") and under the laws of the State of New York; and

WHEREAS, the Court having entered an *Ex Parte* Temporary Restraining Order, order to

Disable Certain Websites, Asset Restraining Order, Expedited Discovery Order and Order to Show

Cause for Preliminary Injunction ("TRO") on October 5, 2012 (Dkt. No. 3), directing, *inter alia*,

that certain websites operating under domain names using Plaintiff's federally registered MISS

ME trademark and service mark (defined therein as the "Infringing Miss Me Domain Names") be

disabled, and that such domain name registrations for the Infringing Miss Me Domain Names be

deactivated (TRO at p. 9); and

WHEREAS, by Order dated October 19, 2012, the Court having amended the TRO to

encompass two additional, newly discovered websites that infringed Plaintiff's registered MISS

ME trademark and service mark, namely "missmejeansoutlets.com" and "missme-jeans.org" (Dkt.

No.6); and

WHEREAS, by Order dated November 5, 2012, the Court having dissolved the TRO and

issued a Preliminary Injunction extending the terms of the TRO for the pendency of this litigation

(the "PI Order") (Dkt. No.9); and

WHEREAS, by Order dated November 14, 2012, the Court having amended the PI Order

to encompass an additional, newly discovered website that infringed Plaintiff's registered MISS

ME trademark and service mark, namely "cheapmissmejeans.org" (Dkt. No.13); and

WHEREAS, by Order dated December 4, 2012, the Court having further amended the PI

Order to encompass three additional newly discovered websites that infringed Plaintiff's registered

MISS ME trademark and service mark, namely "missmejeansclearance.com",

"missmejeanswholesale.com" and "okeyjeans.com" (Dkt. No.14); and

2

WHEREAS, on October 5, 2012, the Defendants having been served with copies of the Summons and Complaint as ordered in the TRO, and proofs of such service having been filed with the Court on November 5, 2012 (Dkt. Nos.7-8); and

WHEREAS, Defendants having failed to appear, answer the Complaint or otherwise defend this action; and

WHEREAS, a Certificate of Default having been entered against Defendants by the Clerk of the Court on November 7, 2012 (Dkt. No.10); and

WHEREAS, counsel for Plaintiff having filed a Motion for Default Judgment, together with the Declaration of Alan C. Veronick in support thereof, and having served such papers on Defendants in accordance with the service requirements set forth in the TRO; and

WHEREAS, Defendants having failed to appear or offer any opposition to such Motion for Default Judgment despite due notice; and

This Court, having reviewed such motion papers, all the pleadings, papers submitted in support of Plaintiff's Motion for an *Ex Parte* Temporary Restraining Order, order to Disable Certain Websites, Asset Restraining Order, Expedited Discovery Order and Order to Show Cause for Preliminary Injunction Motion, and all other related documents to date, **HEREBY** finds as follows:

## I.   FINDINGS OF FACT

1.     Sweet People manufactures, promotes, sells and distributes high-quality jeanswear and denim products throughout the United States under the MISS ME and MM COUTURE brand names. *See* Complaint at ¶11.

2.     Over the past several years, the MISS ME and MM COUTURE lines of apparel products have become extremely popular and have generated substantial goodwill in the highly

competitive apparel industry. Due to their popularity, Sweet People's MISS ME and MM

COUTURE products have received extensive media coverage and have appeared in numerous

widely circulated fashion magazines, including *In Style, Elle, Glamour, Lucky, 944 Magazine,*

*Harper's Bazaar, Lucky, Teen Vogue* and *Nylon.* In addition, celebrities such as Miley Cyrus,

Paris Hilton and Beyonce have been photographed wearing Sweet People's products. *See*

Complaint at ¶12.

3.      Sweet People's apparel products are sold by such well-known national retailers and

department stores as Macy's, Dillard's and The Buckle, both in-store and online, as well as

through Sweet People's authorized Internet web store located at "www.missme.com" (the

"Authorized Miss Me Website"). *See* Complaint at ¶13.

4.      The Authorized Miss Me Website features Sweet People's proprietary images and

content, contains countless usages of Sweet People's MISS ME and MM COUTURE trademarks,

and includes images of Sweet People products sold under the MISS ME and MM COUTURE

marks. Sweet People has devoted, and continues to devote, a great deal of time, energy and

resources to the maintenance of the Authorized Miss Me Website, and to creating the imagery and

content, including videos and advertisements, that appear on this site. The Authorized Miss Me

Website is extremely popular, enjoying many thousands of unique visitors per month. Further,

since its inception, millions of dollars worth of MISS ME and MM COUTURE brand products

have been sold through the Authorized Miss Me Website. *See* Complaint at ¶14. Attached hereto

as Exhibit A are true and correct copies of images appearing on the Authorized Miss Me Website.

5.      Sweet People is the owner of a number of trademarks and service marks for use in

connection with its collection of jeanswear, sportswear, accessories and for other products and

services, including retail store and online retail services. For example, Sweet People is the owner

of numerous federal trademark and service mark registrations with the U.S. Trademark Office for

its MISS ME and MM COUTURE marks, including, *inter alia*, the following federal registrations:

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3,790,104 | MISS ME | On-line retail store services featuring clothing and apparel |
| 3,958,985 | MISS ME | On-line retail store services featuring women and children's clothing; retail apparel stores; retail clothing boutiques; retail clothing stores |
| 3,116,485 | MISS ME | Men's, women's, children's apparel namely shirts, blouses, jeans, trousers, slacks, coats and dresses. |
| 3,651,168 | Miss Me | Blouses; camisoles; cardigans; coats for men and women; dresses; jackets; jeans; men and women jackets, coats, trousers, vests; pants; scarves; shirts; skirts and dresses; slacks; sweaters; swim wear for gentlemen and ladies; t-shirts; trousers; vests |
| 3,912,344 | MISS ME | Clutch purses; handbags; handbags, purses and wallets; leather bags and wallets; purses; shoulder bags; wallets; wallets with card compartments |
| 3,490,718 | Miss Me | All-purpose carrying bags; beach bags; book bags. |
| 3,171,165 | M | Jackets; Jeans. |

5

| | | |
|---|---|---|
| 3,579,467 | MM COUTURE | Blouses; cardigans; coats; dresses; hooded pullovers; hooded sweat shirts; jackets; pants; shorts; skirts; skirts and dresses; sweaters; t-shirts; tank tops; vests. |

*See* Complaint at ¶15. The trademarks and service marks listed above are collectively referred to as the Sweet People Marks. True and correct copies of Sweet People's federal trademark registrations for the Sweet People Marks are attached hereto as Exhibit B.

6. Sweet People has used, and is currently using the Sweet People Marks in commerce on or in connection with its sale of Sweet People products, and in connection with providing retail and online services, including on its Authorized Miss Me Website, and plans to continue such use in the future. *See* Complaint at ¶17.

7. Consumers, potential consumers and other members of the public associate the Sweet People Marks with Sweet People, immediately recognize and expect that products and services bearing these marks originate with and/or are approved or sponsored by Sweet People, and have come to expect that products and services bearing these marks are of the highest quality and reliability. Consequently, Sweet People has built, and enjoys, an outstanding reputation and significant goodwill in association with the Sweet People Marks. *See* Complaint at ¶18.

8. Defendants have engaged in the willful, deliberate and systematic (i) registration and use of Sweet People's federally registered MISS ME trademark and service mark in connection with various domain names and websites, including "missme-jeans.com", "missmejeansoutlet.com", "missmejeansoutlets.com", "missme-jeans.org", "cheapmissmejeans.org", "missmejeansclearance.com", "missmejeanswholesale.com" and "okeyjeans.com" (the "Infringing Miss Me Websites"); and (ii) copying of the proprietary content

6

appearing on Sweet People's authorized website, located at www.missme.com, including

registered trademarks and service marks appearing on that site. Examples of screenshots

appearing on the Infringing Miss Me Websites are attached hereto as Exhibit C. *See* Complaint at

¶¶2, 22-33; Dkt. Nos. 3, 6, 9, 13 and 14.

9.      Defendants have engaged in such unlawful conduct in order to mislead consumers

into believing that Defendants' websites are Sweet People's own MISS ME brand websites, or are

authorized, sponsored and/or approved by Sweet People, all in an effort to defraud consumers into

providing Defendants with personal identifying information, including names, addresses and credit

card account numbers, and to entice such unsuspecting consumers into ordering MISS ME brand

products from Defendants and paying Defendants for such products, even though Defendants have

no intention of fulfilling said orders. *See* Complaint at ¶¶3, 22-33; Dkt. Nos. 3, 6, 9, 13 and 14.

10.     Defendants' willful scheme to defraud consumers into providing Defendants with

their personal information and their hard-earned money, which such consumers believe they are

paying over to Sweet People for genuine MISS ME brand products, is causing Sweet People to

suffer irreparable and substantial harm to its goodwill and reputation. *See* Complaint at ¶¶2-3, 22-

33; Dkt. Nos. 3, 6, 9, 13 and 14.

11.     Defendants were aware that the Sweet People Marks were owned by Sweet People

at the time they created the Infringing Miss Me Websites. *See* Complaint at ¶30. Moreover,

Defendants have registered and used the Infringing Miss Me Websites with a bad faith intent to

profit from their use of the Sweet People Marks and to trade on the reputation and goodwill

symbolized by these marks. *See* Complaint at ¶29.

12.     Consumers have mistakenly believed that the Infringing Miss Me Websites are

actual, genuine MISS ME brand websites, authorized, sponsored, approved or in some way

7

affiliated with Sweet People, when in fact, they are not. Defendants' continued unauthorized use of the Sweet People Marks in this manner is likely to continue to mislead, deceive, and confuse consumers. *See* Complaint at ¶31.

13.    Defendants intend to continue to engage in their unlawful conduct unless otherwise restrained by this Court. *See* Complaint at ¶32.

14.    Unless Defendants' conduct is immediately enjoined, such conduct is likely to continue to cause confusion, mistake and deception and will severely inhibit and/or destroy the ability of the Sweet People Marks to identify Sweet People as the exclusive source of the goods or services on which they appear or are used. *See* Complaint at ¶33.

## II.    CONCLUSIONS OF LAW

15.    The Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, and 15 U.S.C. §§ 1116 and 1121, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiffs' claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, and substantial and related claims under the common law of the State of New York. *See* Complaint at ¶4.

16.    This Court has personal jurisdiction over Defendants in that each Defendant transacts business in the State of New York and in this judicial district. In particular, by continuously soliciting business from New York residents on the Internet through one or more fully interactive websites, and by interacting with and accepting payments from New York residents, Defendants have transacted business in interstate commerce, including in New York, and have wrongfully caused Sweet People substantial injury in the State of New York. *See* Complaint at ¶5.

8

17.     Plaintiff has succeeded on its claim that Defendants violated the Anticybersquatting

Consumer Protection Act (15 U.S.C. § 1125(d)), in that it has shown that (1) its MISS ME mark is

distinctive and famous, (2) Defendants have registered domain names containing the identical

mark and (3) Defendants are acting in bad faith. *Mattel, Inc. v. Internet Dimensions, Inc.*, 55

U.S.P.Q. 2d (BNA) 1620, 1621-22 (S.D.N.Y. 2000). *See also* Complaint at ¶¶34-40.

18.     Plaintiff has succeeded on its claims for trademark and service mark counterfeiting

and infringement (15 U.S.C. § 1114), in that it has shown that (1) the Sweet People Marks are

entitled to protection; and (2) there is a likelihood of confusion between Defendants' offering for

sale of counterfeit products sold under the Sweet People Marks and genuine MISS ME brand

products bearing the Sweet People Marks. *See, e.g.*, *Otokoyama Co. v. Wine of Japan Import,

Inc.*, 175 F.3d 266, 270 (2d Cir. 1999); *Banff, Ltd. v. Federated Dept. Stores Inc.*, 841 F.2d 486,

489-90 (2d Cir. 1988); *see also Lorillard Tobacco Co. v. Jamells Grocery, Inc.*, 378 F. Supp. 2d

448, 455 (S.D.N.Y. 2005). *See also* Complaint at ¶¶41-64.

19.     For the reasons stated in the preceding paragraph, Plaintiff has succeeded on its

federal unfair competition and false designation of origin claims against Defendants, *see Marshak

v. Shappard,* 666 F. Supp. 590, 602 (S.D.N.Y. 1987) (no separate analysis is required for these

claims), as well as its claims for unfair competition, trademark infringement and deceptive acts

and trade practices under the common and statutory laws of the State of New York, *see Tri-State

Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 359 n. 18 (S.D.N.Y. 1998) (no separate analysis is

required for these claims). *See* Complaint at ¶¶65-70 and ¶¶76-85.

20.     Plaintiff has succeeded on its false advertising claim against Defendants (15 U.S.C.

§ 1125(a)), in that it has shown that Defendants, using marks that are identical to the Sweet People

Marks, have falsely and misleadingly described and misrepresented to consumers that they are

9

selling authentic Sweet People products, all in an effort to collect personal identifying information from consumers and payments for products that do not exist, and which such consumers will never receive. *See, e.g., Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995). *See* Complaint at ¶¶71-75.

21.     In actions such as this one for trademark counterfeiting and infringement, false designation of origin, and other related claims, willfulness is determined by whether the Defendants had knowledge that their conduct represented infringement or recklessly disregarded the possibility thereof. *See, e.g., Phillip Morris USA Inc. v. Marlboro Express*, 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005). Knowledge "need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (internal citation omitted). Where a defendant has defaulted on claims of this nature, the Court may infer such willfulness on that ground alone. *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Here, Plaintiff alleged in the Complaint that Defendants were aware that the Sweet People Marks were owned by Sweet People at the time they created the Infringing Miss Me Websites. *See* Complaint at ¶30. Accordingly, in view of the evidence and their failure to appear, the Court finds that Defendants have been engaging in their unlawful activities knowingly and intentionally, and/or with reckless disregard for Sweet People's rights in and to the Sweet People Marks.

22.     Plaintiff has elected to recover statutory damages under 15 U.S.C. § 1117(d), in connection with its Anticybersquatting Consumer Protection Act ("ACPA") claim with respect to Defendants' willful registration of domain names that infringe the MISS ME mark. Under such Section of the ACPA, Plaintiff is entitled to recover damages in the amount of $100,000 per infringing domain name. Accordingly, Plaintiff is entitled to an award of $700,000, calculated as

follows: $100,000 against the owners of each of the following domain names: "missme-jeans.com", "missmejeansoutlet.com", "missmejeansoutlets.com", "missme-jeans.org", "cheapmissmejeans.org", "missmejeansclearance.com", "missmejeanswholesale.com." *See* 15 U.S.C. § 1117(d).

22.    Plaintiff has elected to recover statutory damages under 15 U.S.C. § 1117(c), in connection with its claims of willful trademark counterfeiting. *See* 15 U.S.C. § 1117(c). Here, Defendants have willfully counterfeited Plaintiff's MISS ME trademark (*see* Complaint at ¶¶41-48); MISS ME service mark (*see* Complaint at ¶¶41-48); M DESIGN trademark (*see* Complaint at ¶¶49-56); and MM COUTURE trademark (*see* Complaint at ¶¶65-70) by using such marks on and in connection with the offering for sale of counterfeit products on the Infringing Miss Me Websites. While under 15 U.S.C. § 1117(c), Plaintiff is entitled to claim $2 million per counterfeit mark per type of goods or services used, sold, offered for sale, and/or distributed by Defendants, here Plaintiff only seeks an award of $300,000 per counterfeit mark, which the Court finds to be reasonable for the reasons set forth herein. Accordingly, Plaintiff is entitled to an award of $10 million, calculated as follows: $1.25 million against the owners of each of the following Infringing Miss Me Websites: "missme-jeans.com", "missmejeansoutlet.com", "missmejeansoutlets.com", "missme-jeans.org", "cheapmissmejeans.org", "missmejeansclearance.com", "missmejeanswholesale.com" and "okeyjeans.com."

23.    In similar actions, Courts in this Judicial District have granted other plaintiffs substantial statutory damages awards, including awards up to the maximum statutory amount of $2 million for willful counterfeiting. *See e.g., The National Football League v. Chen Cheng d/b/a nfljerseydiscount.com*, No. 11-Civ-0944 (WHP) (S.D.N.Y. Jan. 19, 2011) (awarding the NFL a total of $164 million in statutory damages for willful infringement against all defendants); *Levi*

*Strauss & Co. v. Ding Shijun d/b/a/LevisOnline.com*, No. 11-Civ-7495 (WHP) (S.D.N.Y. Oct. 24,

2011) (awarding plaintiff a total of $276 million in statutory damages for willful infringement

against all defendants); *Tory Burch LLC v. Yong Sheng Int'l Trade Co., Ltd.*, No. 10-Civ-9366

(DAB) (S.D.N.Y. Dec. 17, 2010) (awarding plaintiff a total of $164 million in statutory damages

for willful infringement against all defendants); *The North Face Apparel Corp and PRL USA

Holdings Inc v. Fujian Sharing Import & Export Ltd. Co. d/b/a b2bsharing. com*, Civil Action No.

10-Civ-1630 (AKH) (S.D.N.Y. 2010) (awarding plaintiffs $78 million in statutory damages for

willful infringement against all defendants); *Burberry Limited (UK) v. Burberry-Scarves.com*, 10

Civ. 9240 (TPG) (S.D.N.Y. May 5, 2011) (statutory damages in the amount of $60 million against

all defendants); *Gucci Am., Inc. v. Curveal Fashion*, No. 09-Civ-8458 (RJS) (S.D.N.Y. Jan. 20,

2010) (awarding plaintiffs $13 million in statutory damages against a single defendant based on its

willful infringement); *YahooA Inc. v. XYZ Cos.*, 2011 WL 6072263, at *7 (S.D.N.Y. Dec. 5, 2011)

(awarding statutory damages of between $1 million and $2 million per trademark and service mark

counterfeiting for a total award of $27 million).

      24.    A large damages award is likely "to have a deterrent effect on both Defendants and

other would-be perpetrators of a similar scheme." *YahooA Inc.*, 2011 WL 6072263, at *7; *see also

UMG Recordings, Inc. v. MP3.Com, Inc.*, 2000 WL 1262568, at *5-6 (S.D.N.Y. Sept. 6, 2000)

("the potential for huge profits in the rapidly expanding world of the Internet is the lure ... that will

also tempt others to [break the law] if too low a level is set for the statutory damages in this case");

*Verizon Cal. Inc. v. Onlinenic Inc.*, 2009 WL 2706393, at *9 (N.D. Cal. Aug. 25, 2009) ("the

number of domain names that infringe [Verizon's] marks has decreased substantially since the

entry of the default judgment on December 19, 2008, and OnlineNIC admits that 'publicity about

the massive judgment against [it] ... gain[ed] much attention' in Asia beginning in late December

2008"). Here, the Court's award of $10 million in statutory damages serves such purpose.

25.     Defendants' use of the Sweet People Marks on and in connection with the

Infringing Miss Me Websites will result in immediate, continuing and irreparable injury to

Plaintiff if such activities are not permanently restrained and enjoined. *See, e.g., Church of*

*Scientology Int'l v. Elmira Mission of the Church of Scientology,* 794 F.2d 38, 43 (2d Cir. 1986).

26.     Enjoining Defendants from using the Sweet People Marks is in the public's interest,

as were it otherwise, consumers are likely to mistakenly believe that Defendants use of such marks

are authorized by Plaintiff. *See, e.g., New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,*

704 F. Supp. 2d 305,344 (S.D.N.Y. 2010); *Coach, Inc. v. O'Brien,* 10-Civ-6071 (JPO) (JLC),

2011 WL 6122265, at *12 (S.D.N.Y. Nov. 28, 2011).

27.     Plaintiff has demonstrated that even after the original Infringing Miss Me Websites

were disabled and deactivated, Defendants have continued to infringe Plaintiff's registered MISS

ME trademark and service mark by continuing to set up new register infringing domain names and

websites. *See* Dkt. Nos. 3, 6, 9, 13 and 14. Accordingly, Plaintiff seeks a permanent injunction

that would permit it to move this Court for supplemental orders to disable and/or delete any newly

discovered infringing MISS ME websites or domain names. An "injunction often requires

continuing supervision by the issuing court and always a continuing willingness to apply its

powers and processes on behalf of the party who obtained that equitable relief." *System Fed. No.*

*91 Railway Employees' Dep't v. Wright,* 364 U.S. 642, 647 (1961); *see also The National Football*

*League v. MomoLee d/b/a nflmonstershop.com,* No. 11-cv-8911 (KC) (Feb. 17, 2012).

13

28.     Absent the foregoing requested permanent injunctive relief, Defendants are likely to continue their unlawful conduct and continue to circumvent the orders of the Court. *See* Complaint at ¶32.

29.     Based on the above, and pursuant to 15 U.S.C. § 1116(a), Plaintiff is entitled to a permanent injunction against Defendants. *See, e.g.*, 15 U.S.C. § 1116(a) (a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable"); *see also Lyons P'ship, L.P. v. D&LAmusement & Entm't*, 702 F. Supp. 2d 104 (E.D.N.Y 2010).

30.     Plaintiff is further entitled to an award of attorneys' fees and costs, because the instant matter qualifies as an exceptional case under 15 U.S.C. § 1117(a), on account of Defendants' willful infringement and counterfeiting of the Sweet People Marks. *See, e.g.*, *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83,111 (2d Cir. 2012); *Patsy's Brand, Inc. v. I.OB. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003)).

31.     Defendants have defaulted, and a default judgment shall be ordered and entered against them.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.     Pursuant to 15 U.S.C. § 1116(a), Defendants, and their respective officers, directors, agents, representatives, successors, servants and employees and any persons in active concert or participation with them are permanently enjoined and restrained from:

> 1.     Using the Sweet People Marks, or any reproduction, counterfeit, copy or colorable imitation of the Sweet People Marks, in connection with the purported provision of online retail services; and

14

      2.     Using the Sweet People Marks, or any reproductions, counterfeit, copy or colorable imitation of the Sweet People Marks, in connection with the purported distribution, advertising, promotion, marketing, offer for sale and/or sale of products that are not authorized by Sweet People; and

      3.     Registering any domain names that use, or incorporate in any way, any of the Sweet People Marks or any other trademarks or service marks owned by Sweet People; and

      4.     Creating, owning, designing, operating and/or hosting the Infringing Miss Me Websites, or any other websites that use the Sweet People Marks or any other trademarks or service marks owned by Sweet People; and

      5.     Using the Sweet People Marks, or any reproductions, counterfeit, copy or colorable imitation of the Sweet People Marks, in connection with the collection of personal identifying information and the processing of any payments.

B.     Pursuant to 15 U.S.C. § 1116(a) and this Court's inherent equitable power, the domain name registries for the Infringing Miss Me Websites, including but not limited to eNom, Inc., Namecheap, Inc. d/b/a Namecheap.com, GoDaddy.com, LLC, Privacy Guardian and Namesilo, LLC, and/or the individual registrars holding or listing one or more domain names used in conjunction with the Infringing Miss Me Websites, shall

      1.     Within three (3) days after receipt of notice of this Permanent Injunction, disable and/or continue to disable the domain names used in conjunction with the Infringing Miss Me Websites, through a registry hold or otherwise, and continue to make them inactive and nontransferable; and

15

2.    Within thirty (30) days after receipt of notice of this Permanent Injunction,
transfer the domain names associated with the Infringing Miss Me Websites
to Sweet People's ownership and control, including, *inter alia*, by changing
the registrar of record to the registrar of Sweet People's choosing, unless
Sweet People requests that the domain name registration for a specific
domain name be deleted rather than transferred.

C.    Pursuant to this Court's inherent equitable powers and its power to coerce
compliance with its lawful orders, until such time as Sweet People has recovered the full payment
of monies owed to them by any Defendant under this Permanent Injunction, in the event Sweet
People discovers new monies or accounts belonging to or controlled by any Defendant:

1.    Sweet People shall have the ongoing authority to serve this Permanent
Injunction on any party controlling or otherwise holding such accounts,
including but not limited to any merchant account providers, payment
providers, or third party processors (collectively, "Account Holder"); and

2.    Such Account Holder shall immediately locate and restrain all accounts
belonging to or controlled by such Defendant from transferring or disposing
of any money, stocks or other of such Defendant's assets, not allowing such
funds to be transferred or withdrawn by such Defendant and shall provide
Sweet People with the information relating to those web sites and/or
accounts; and

3.    After thirty (30) days following the service of this Permanent Injunction on
such Defendant and Account Holder, Account Holder shall transfer all
monies in the restrained accounts to Sweet People, unless the Defendant has

16

filed with the Court and served upon Plaintiff's counsel a request that such monies be exempted from this Permanent Injunction; and

4.     Any Defendant may upon two (2) days' written notice to the Court and Sweet People's counsel, upon proper showing, appear and move for the dissolution or modification of the provisions of this Permanent Injunction concerning the restriction upon transfer of such new monies or accounts belonging to or controlled by any Defendant

D.     Pursuant to this Court's inherent equitable powers and its power to coerce compliance with its lawful orders, and due to the ongoing registration of new domain names and websites that infringe the Sweet People Marks for the purpose of continuing to engage in counterfeiting activities, in the event Sweet People discovers any new websites (the "Newly Detected Infringing Websites") registered or operated containing the Sweet People Marks or marks confusingly similar thereto and/or used in conjunction with the sale of counterfeit or infringing products:

1.     Sweet People may move the Court for a supplemental order ("Supplemental Order"), in the form attached hereto as Exhibit A, identifying the Newly Detected Infringing Websites; and

2.     The domain name registries and/or the individual registrars holding and/or listing one or more of the Newly Detected Infringing Websites, upon receiving notice of a Supplemental Order identifying a Newly Detected Infringing Website, shall, within three (3) days, temporarily disable any domain name associated with a Newly Detected Infringing Website and make such domain name inactive and nontransferable; and

17

3.    After thirty (30) days following the service of such a Supplemental Order, the domain name registries and/or the individual registrars holding and/or listing one or more of the domain names associated with a Newly Detected Infringing Website, shall transfer such domain names to the ownership and control of Sweet People including, *inter alia*, by changing the registrar of record to the registrar of Sweet People's choosing, unless the registrant of the domain name associated with such Newly Detected Infringing Website has filed with the Court and served upon Sweet People's counsel a request that such Newly Detected Infringing Website be exempted from this Permanent Injunction or unless Sweet People requests that the domain name registration for such Newly Detected Infringing Website be deleted rather than transferred; and

4.    Any registrant of a domain names associated with a Newly Detected Infringing Website may, upon two (2) days' written notice to the Court and Sweet People's counsel, and upon proper showing, appear and move for the dissolution or modification of the provisions of this Permanent Injunction or Supplemental Order concerning the restriction upon transfer of such domain name belonging to or controlled by any such registrant; and

E.    Pursuant to this Court's inherent equitable powers and its power to coerce compliance with its lawful orders, Sweet People may obtain documents and records of any Newly Detected Infringing Website or any domain name associated therewith as follows:

1.    By providing actual notice of this Permanent Injunction to any of the following: (l) any registrant of a domain name associated with a Newly

18

Detected Infringing Website, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them; (2) any banks, savings and loan associations, payment processors or other financial institutions, including any merchant account providers, payment providers, third party processors, credit card associations (*e.g.*, MasterCard and VISA), which receive payments or hold assets on behalf of any registrant of a domain name associated with a Newly Detected Infringing Website; and (3) any third party service providers, including without limitation, ISPs, back-end service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars, domain name registration service providers, website hosts, or online third-party selling platforms who have provided services associated with any Newly Detected Infringing Website (collectively "Third Party Service Providers"); and

2.   Any third party providing services in connection with any Newly Detected Infringing Website, including without limitation, banks, merchant account providers including PayPal, and Third Party Service Providers shall within seven (7) days after receipt of such notice, provide copies of all documents and records in such person or entity's possession or control relating to:

    (a)   The identities and addresses of any registrant of a domain name associated with a Newly Detected Infringing Website, their agents, servants, employees, confederates, and any persons acting in concert or participation with them and the locations and identities of such

19

registrant's operations, including without limitation, identifying
information associated with such registrant's websites, domain
names and financial accounts; and

(b) The Newly Detected Infringing Website; and

(c) Any domain name associated with the Newly Detected Infringing
Website, or any other domain names registered by the registrant of
the domain name associated with the Newly Detected Infringing
Website; and

(d) Any financial accounts owned or controlled by any registrant of a
domain name associated with the Newly Detected Infringing
Website, including their agents, servants, employees, confederates,
attorneys, and any persons acting in concert or participation with
them, including such accounts residing with or under the control of
any Third Party Service Provider.

F.       Pursuant to 15 U.S.C. § 1117(d), Plaintiff be awarded statutory damages in the
amount of $700,000, calculated as follows: $100,000 against the owners of each of the following
domain names: "missme-jeans.com", "missmejeansoutlet.com", "missmejeansoutlets.com",
"missme-jeans.org", "cheapmissmejeans.org", "missmejeansclearance.com",
"missmejeanswholesale.com."

G.       Pursuant to 15 U.S.C. § 1117(c), Plaintiff be awarded statutory damages in the
amount of $10 million, calculated as follows: $1.25 million against the owners of each of the
following Infringing Miss Me Websites: "missme-jeans.com", "missmejeansoutlet.com",



20

"missmejeansoutlets.com", "missme-jeans.org", "cheapmissmejeans.org",

"missmejeansclearance.com", "missmejeanswholesale.com" and "okeyjeans.com."

     H.    Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to an award of reasonable

attorneys' fees in the amount of $75,432.50 along with costs in the amount of $925.89 incurred

herein as a result of Defendants' intentional and willful infringement.

     I.    Pursuant to 28 U.S.C. § 1961(a), Plaintiff is entitled to post-judgment interest on

the total amount of the monetary award.

     J.    The bond posted by Sweet People on October 11, 2012 (Receipt Number

465401050693) is hereby released and forever discharged.

     K.    This Court shall retain jurisdiction over the parties and the subject matter of this

litigation for the purpose of interpretation and enforcement of this Default Judgment and

Permanent Injunction Order.

     This is a FINAL JUDGMENT.

SO ORDERED:

SIGNED this ____ day of ____ 2013

THE HONORABLE SHIRA A. SCHEINDLIN

21